NUMBER 13-07-00372-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


WILLIAM A. THOMAS, Appellant,


v.
 


ALISON PIORKOWSKI, Appellee.

 


On appeal from the 319th District Court 


of Nueces County, Texas.


 


 O P I N I O N



Before Justices Yañez, Rodriguez, and Benavides


Opinion by Justice Rodriguez



 This case involves clarification of a final decree of divorce. By three issues,
appellant William A. Thomas challenges the trial court's clarification order alleging that the
trial court erred (1) by clarifying the decree and awarding his disability benefits as
disposable retirement pay, (2) in not considering retroactive application of his permanent
disability status to set aside the clarification order, and (3) in entering a clarifying order that
made a substantive change in the decree. We reverse and remand.

I. Background

 Thomas and appellee Alison Piorkowski (1) were divorced on December 3, 2004. The
final decree of divorce provided for a division of the marital estate. The decree awarded
the following to Piorkowski:

 W-5. All right, title, and interest in and to the sum equal to fifty percent (50%)
of the disposable retired pay of WILLIAM A. THOMAS which accumulated,
accrued or to which WILLIAM A. THOMAS is otherwise entitled between May
25, 1996 and the day this decree is signed which is a result of WILLIAM A.
THOMAS's service in the United States Armed Forces, and that share
attributable to the interest awarded to ALISON THOMAS of disposable
retired pay, if, as and when received by WILLIAM A. THOMAS.


 On May 5, 2006, Thomas was placed on the Temporary Disability Retirement List
(TDRL) by the United States Armed Forces (Navy) with a thirty percent disability rating. 
See 10 U.S.C.A. § 1202 (1998) On June 1, 2006, Thomas began receiving benefits
computed under section 1401. See id. § 1401 (Supp. 2009).

 On September 27, 2006, Piorkowski filed a motion to clarify the decree of divorce
and to enforce the division of property. By her motion, Piorkowski sought to recover, as
disposable retired pay, her share of Thomas's TDRL benefits. Piorkowski alleged that
Thomas was receiving retirement pay and that he refused to deliver to Piorkowski her
proportionate share. Piorkowski asked that the trial court enter a clarifying order restating
the terms of the decree in a manner specific enough to allow enforcement by contempt. 
In response, Thomas objected, alleging that the decree of divorce was specific,
unambiguous, and enforceable. He also contended that the TDRL benefits were based
on his disability and thus, were a form of disability pay and not retirement pay subject to
division by the trial court.

 In March 2007, the trial court held an evidentiary hearing on Piorkowski's motion. 
Over Thomas's objections, the trial court granted the motion and entered a clarification
order which set out, in relevant part, the following:

 Clarification


 The [c]ourt finds that certain terms of the prior order are not specific
enough to be enforced by contempt and should be clarified as ordered below
. . . .

 

 * * * * * 

 

 IT IS ORDERED that the prior order is clarified as follows:

 

 1. That portion of the Final Decree of Divorce awarding property
to wife and as contained in paragraph W-5 on page 40 is
amended as follows:

 

 Division of Military Benefits of William A. Thomas

 

 The [c]ourt finds, in accordance with the Uniformed Services Former
Spouses' Protection Act [USFSPA], 10 U.S.C. section 1408, as follows:

 

 1. Alison T. Piorkowski is awarded as her sole and separate
property, the sum of $510.86 per month of the disposable retired pay of
William A. Thomas as long as William A. Thomas is placed on the
Temporary Disability Retirement List and receiving monthly retirement pay.

 

 2. William A. Thomas is Ordered to deliver to Alison T. Piorkowski
the sum of $510.86 per month until such time as William A. Thomas receives
a final disability rating from the U.S. Navy.


 * * * * *

 

 The award of disposable retired pay made to Alison T. Piorkowski in
this decree is made in compliance with the [USFSPA].

 

 IT IS THEREFORE ORDERED AND DECREED that Alison T.
Piorkowski have judgment against and recover from William A. Thomas the
sum of $510.86 per month of the disposable retired pay of William A.
Thomas.


 * * * * *


 Findings

 

 * * * * *

 

 5. Since the date of divorce, William A. Thomas has been placed
upon the Temporary Disability Retirement List by the U.S. Navy and is
currently receiving retirement pay in the amount of $1,246.00 per month
[s]ince July 1, 2006.


 * * * * *

 

 Relief Granted

 

 IT IS ADJUDGED that Respondent, William A. Thomas, is in
contempt for each separate violation enumerated above.

 

 The [c]ourt finds that Respondent has failed to pay to Petitioner
money that was awarded in the prior decree and that the amount of unpaid
payments to which Petitioner is now entitled is $4,597.74.

 Thomas filed a motion for new trial requesting that the clarifying order be set aside
because it (1) awarded Piorkowski property she was not entitled to receive, (2) created an
obligation that was not part of the relief requested and effectively reallocated property not
consistent with the final decree of divorce, and (3) did not account for his level of disability
or current disability rating. At the evidentiary hearing on his motion, having recently been
declared eighty percent disabled by the Veterans Administration (VA), Thomas also asked
that the order awarding retirement benefits be set aside by retroactive application of his
disability status to the inception of his TDRL. Over objections, the trial court denied
Thomas's motion for a new trial. This appeal ensued.

II. Standard of Review

 We review the trial court's ruling on a post-divorce motion for clarification of a
divorce decree or for enforcement under an abuse of discretion standard. Worford v.
Stamper, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); Baker v. Donovan, 199 S.W.3d
577, 579 (Tex. App.-Houston [1st Dist.] 2006, pet. denied) (op. on reh'g); In re Marriage
of McDonald, 118 S.W.3d 829, 832 (Tex. App.-Texarkana 2003, pet. denied). The test
for abuse of discretion is a question of whether the court acted without reference to any
guiding rules and principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242
(Tex. 1985).

III. Discussion

 By his first issue, Thomas contends that the trial court abused its discretion by
entering a clarifying order awarding Piorkowski $510.86 as disposable retired pay. Thomas
asserts that the money awarded to Piorkowski was not disposable retired pay but was
disability pay and was awarded in direct violation of section 1408(a)(4)(C) of the USFSPA. 
See 10 U.S.C.A. § 1408(a)(4)(C) (1998) (providing for payment of retired pay in
compliance with court orders). We agree.

 The decree of divorce awarded Piorkowski "fifty percent (50%) of the disposable
retired pay . . . if, as and when received by [Thomas]." In clarifying the decree, the trial
court found that Thomas had been placed on the TDRL and had been receiving retirement
pay in the amount of $1,246.00 per month since July 1, 2006. The court awarded
Piorkowski $510.86 per month of Thomas's disposable retired pay as long as Thomas was
on the TDRL and was receiving monthly retirement pay.

 Under the USFSPA, military retirement benefits are generally apportionable by a
divorce. See id. § 1408(c)(1) (1998); Mansell v. Mansell, 490 U.S. 581, 589 (1989);
Limbaugh v. Limbaugh, 71 S.W.3d 1, 16-17 (Tex. App.-Waco 2002, no pet.); Wallace v.
Fuller, 832 S.W.2d 714, 719 (Tex. App.-Austin 1992, no writ); Gallegos v. Gallegos, 788
S.W.2d 158, 169 (Tex. App.-San Antonio 1990, no writ). However, apportionable benefits
are limited to "disposable retired pay," which is defined to exclude, among other things,
disability pay including retirement benefits that may be waived in order to collect VA
disability benefits and those computed using the percentage of disability on the date a
person in the military is placed on TDRL. Limbaugh, 71 S.W.3d at 16-17, 17 n.13 (citing
10 U.S.C.A. § 1408(a)(4)(A-D) (1998)); see Mansell, 490 US at 589 (determining that state
courts have the authority to treat disposable retired pay, not total retired pay, as community
property). Specifically, "disposable retired pay" does not include,

 amounts which . . . in the case of a member entitled to retired pay under
chapter 61 of this title [10 USCS §§ 1201 et seq.], are equal to the amount
of retired pay of the member under that chapter computed using the
percentage of the member's disability on the date when the member was
retired (or the date on which the member's name was placed on the
temporary disability retired list); . . . .

10 U.S.C.A. § 1408(a)(4)(C) (emphasis added). Thomas was entitled to retired pay only
after being placed on the TDRL. His gross pay, in the amount of $1246.00, was computed
using the percentage of disability (thirty percent) on the date he was placed on the TDRL. 
See id. § 1401. The statute expressly excludes from "disposable retired pay" temporary
disability retirement benefits--the $1246.00 in this case. See id. § 1408(a)(4)(C). We
conclude, therefore, that Thomas's gross pay, the money at issue in this case, was not
disposable retired pay and therefore, was not divisible as marital property.

 Moreover, placement on TDRL is governed by section 1202, which provides as
follows:

 Upon a determination by the Secretary concerned that a member described
in section 1201(c) of this title would be qualified for retirement under section
1201 [permanent disability] of this title but for the fact that his disability is not
determined to be of a permanent nature and stable, the Secretary shall . . .
place the member's name on the temporary disability retired list, with retired
pay computed under section 1401 of this title.

Id. § 1202. The statute requires a member to undergo a physical examination at least
once every eighteen months in order to determine "whether there has been a change in
the disability for which he was temporarily retired." Id. § 1210(a) (1998). A member may
remain on the TDRL for up to five years. Id. § 1210(b) (1998). After five years on the
TDRL, the member must be either returned to active duty, if fit for service; permanently
retired for longevity, if at least twenty years of service has been attained; or permanently
retired for disability, if he is at least thirty percent disabled and the disability is permanent
and stable. Id. § 1210(b)-(f) (1998).

 At the time Thomas was placed on TDRL, he had served in the military for ten
years, five months, and eight days. He did not have twenty years service. He was not
eligible for a regular retirement based on longevity. See id. § 3914 (1998) (requiring an
enlisted member of the armed services to have at least twenty years of service to be
retired); see also id. § 6323 (1998 & Supp. 2009) (providing that a naval officer was entitled
to voluntarily retire, with the consent of the United States President, after 20 years of
service). Thomas was not eligible for any retired pay other than that based on his
disability. Because this pay was necessarily based on Thomas's disability, it was not
divisible as marital property. See id. § 1408(a)(4)(C); In re Marriage of Williamson, 205
P.3d 538, 541-43 (Colo. Ct. App. 2009) (concluding that benefits of a husband who was
completely ineligible for any military retirement benefits but for his disability, were based
on his disability and therefore not divisible as marital property); see In re Marriage of
Wherrell, 58 P.3d 734, 741 (Kan. 2002) (recognizing that members eligible for retirement
would potentially receive both disability and retirement benefits with only the disability
portion of the benefit to be excluded form "disposable retired pay"; however, if a member
is not entitled to retired pay, it would not be appropriate to allow only a portion of his
severance to be excluded from division under USFSPA); Bullis v. Bullis, 467 S.E.2d 830,
836 (Va. Ct. App. 1996) (en banc) (concluding that the USFSPA "exempts only that portion
of Chapter 61 benefits which corresponds to the retiree's disability percentage rating at the
time of retirement. If, for example, a service member retires with 60% disability under
Chapter 61, then 60% of the member's retirement benefits are excluded from the definition
of 'disposable retired pay'. The remaining 40% of the member's benefits may be judicially
apportioned under state community property laws.").

 Piorkowski asserts that the plain reading of the statute, specifically certain phrases
found in sections 1202, 1210, and 1211, indicates that the status of a member on the
TDRL is akin to inactive duty or retirement. See 10 U.S.C.A. § 1202 (including "would be
qualified for retirement" and "with retired pay" in section language); id. § 1210 (including
"temporarily retired" in language); id. § 1211 (a-b) (1998) (referring to "active duty");
Transco Prods. Inc. v. Performance Contracting, Inc., 38 F.3d 551, 556 (Fed. Cir. 1994)
("When statutory interpretation is at issue, the plain and unambiguous meaning of a statute
prevails in the absence of clearly expressed legislative intent to the contrary."). However,
sections 1202, 1210, and 1211 should be read in conjunction and harmony with other
sections of the statute which provide for the computation of pay when a member is placed
on the TDRL and with supporting case law. See Hooks v. Tex. Dep't of Water Res., 611
S.W.2d 417, 419 (Tex. 1981). Doing so, we cannot conclude that because Thomas's
status may be akin to retirement because such words are used in certain sections of the
statute, his pay must be retirement pay and not disability pay. We are not persuaded by
that reasoning, especially in light of our discussion above.

 Piorkowski relies on Dambrava v. Office of Personnel Mgmt., 466 F.3d 1061, 1063-64 (Fed. Cir. 2006) (determining that TDRL placement is akin to retirement) and Bradley
v. United States, 161 F.3d 777, 782 (4th Cir. 1998) (deciding that TDRL "status is
comparable to permanent retirement status"), for the proposition that payments received
by a military member while on the TDRL should be considered retirement pay. In
Dambrava, the court determined that Gintaras Dambrava, a civil servant, was not qualified
for immediate retirement because his time on the TDRL was not active service and could
not be included as service credit in the calculation. 466 F.3d at 1065. The Bradley court,
in a summary judgment proceeding, concluded that Sharon Bradley's status was
comparable to permanent retirement when her medical treatment at issue in the case
occurred while she was on the TDRL. 161 F.3d at 782. Thus, the action was not barred
by the immunity doctrine. Id. (citing McGowan v. Scoggins, 89 F.2d 128, 137-39 (9th Cir.
1989) (holding that the Feres doctrine did not bar a retired Army officer from suing for
injuries suffered in an attack by military personnel while he was on the base to obtain a
parking sticker)).

 The issue in Dambrava was whether Dambrava's time on the TDRL was active
service. Dambrava, 466 F.3d at 1062. The Dambrava court determined that it was not. 
Id. at 1065. The issue in Bradley was whether Bradley's status was comparable to
permanent retirement when she received the complained-of medical treatment. Bradley,
161 F.3d at 782. In this case, we are addressing a very different issue--an issue that is
not dependent on the status of Thomas, but on how his pay is calculated and how its
calculation is dependent upon his disability. We cannot read Dambrava and Bradley in
isolation as Piorkowski urges.

 Piorkowski also relies on Baker v. Donovan and In the Marriage of Reinauer, to
support her contention that the trial court awarded disposable retirement pay, not disability
benefits, and, thus, did not abuse its discretion. Baker, 199 S.W.3d at 578; Reinauer, 946
S.W.2d 853, 855-56 (Tex. App.-Amarillo 1997, no pet.). These cases, however, are
distinguishable from the present case.

 In Baker, the divorce decree awarded Karen Donovan "50% of Michael Allen
Baker's present accrued benefit as of the date of the decree, in the U.S. Military Retirement
System." 199 S.W.3d at 578. In 2002, Baker began receiving retirement benefits of
approximately $5,000 per month including $1,069 designated as VA disability pay. Id. 
When Baker failed to pay Donovan's portion of his retirement, Donovan filed a petition to
enforce and clarify the decree. Id. The trial court awarded Donovan a portion of Baker's
military retirement benefits without excluding his VA disability pay. Id. at 578-79. The
Baker court concluded that the trial court did not err in doing so because the proceeding
was an enforcement and clarification proceeding, not a motion to modify proceeding. Id.
at 580. And a motion to modify "would have been required for the trial court to alter or
change the substantive division of property and, thus, [Baker's] request [was] beyond the
power of the trial court." Id. (citing Tex. Fam. Code Ann. § 9.007(b)). The court concluded
that Baker was attempting to collaterally attack the decree in error because there had been
no appeal from the divorce court's division of the property. Id.

 In the present case, the divorce decree awarded interest in "fifty percent (50%) of
the disposable retired pay." In his first issue, Thomas is not challenging the substance of
the division. He is not arguing that Piorkowski is not entitled to a portion of his disposable
retired pay. Rather, Thomas is complaining of the trial court's actions in determining that
his pay is disposable retired pay.

 Likewise, Reinauer is distinguishable. The Reinauer court, under the law in effect
at that time, concluded that Reinauer's compensation under section 1201 (permanent
disability) "had been held to be an earned property right accrued by reason of years of
service rather than gift or gratuity." Id. at 858.

 The court continued with the following reasoning:

 That it may be labeled "disability retirement pay," or the like, mattered not
given its substantive nature. Nor was the fact that it arose due to his forced
retirement of consequence. Thus, having satisfied the requisite indicia, the
monies paid Reinauer by the Navy were, and are, "retirement pay" within the
scope of the 1979 decree.


Id.

 The Reinauer divorce decree became final in 1979, years before the present
USFSPA went into effect, and thus, the USFSPA was not controlling. In the Marriage of
Reinauer, 946 S.W.2d 853, 857 (Tex. App.-Amarillo 1997, no pet.); see Department of
Defense Authorization Act, 1983, Pub. L. No. 97-252 § 1001, 96 Stat. 730-35 (1982). In
1979, Texas courts considered military retirement benefits and chapter 61 military benefits
as a community asset subject to division upon divorce. Reinauer, 946 S.W.2d 853, 857
(citing Busby v. Busby, 457 S.W.2d 551, 551-52, 554 (Tex. 1970), Kirkham v. Kirkham, 335
S.W.2d 393, 394 (Tex. Civ. App. 1960, no writ)). Under the USFSPA today, we would not
reach the same result.

 Therefore, we conclude that the trial court erred in determining that Thomas's pay
was disposable retired pay, in awarding a portion thereof to Piorkowski in the amount of
$510.86 per month, in adjudging Thomas in contempt, and in finding that Piorkowski was
entitled to $4,597.74, the amount of unpaid payments. See Downer, 701 S.W.2d at 242. 
The trial court abused its discretion when it entered a clarifying order reflecting this relief. 
See Worford, 801 S.W.2d at 109. Accordingly, we sustain Thomas's first issue.

 Having sustained this first issue, we need not reach the remaining issues as they
are not dispositive of this appeal. See Tex. R. App. P. 47.1.

IV. Conclusion

 We reverse and remand for entry of a clarification order consistent with this opinion.

 

 

 NELDA V. RODRIGUEZ

 Justice


Opinion delivered and filed 

this 11th day of June, 2009.


1. Alison Thomas's name was changed to Alison Thomas Piorkowski by the final divorce decree.